Plaintiff Samuel Markus brought this products liability design defect action against defendant SICO, Incorporated. Plaintiff claimed he suffered hand injuries when a portable stage platform designed and manufactured by defendant collapsed because its width-to-height ratio exceed accepted safety standards. A jury returned a defense verdict, with the specific finding that the stage platform did not contain a design defect. Plaintiff's assigned errors challenge (1) the court's decision to permit expert testimony by a defense witness and (2) the jury instructions relative to unreasonable misuse.
The evidence showed plaintiff worked part time for a hotel as a banquet houseman. His duties were to set up chairs and tables for functions taking place in banquet and meeting rooms at the hotel. One of the items the hotel used for meetings and banquets was a portable stage platform the hotel bought from defendant in 1978. The portable stage has two halves, each of which folds up over a base, much like a portable bed. In its folded up state, the unit resembles an inverted "V." The stage is mounted over two sets of casters. One set of casters is fixed, while the other set of casters permits the stage to be turned. The stage is large, weighing about three hundred fifty pounds and stands sixty-eight inches high in its unfolded state. When deployed, it has 48 square feet of stage space (6'x 8') and can hold 4,800 pounds.
Plaintiff testified he had extensive experience setting up the stage, having done so three to four times a week for nine months. In that time and, in fact, throughout the entire thirteen years the hotel owned the stage, there had been no accidents of any kind with the stage.
The accident occurred when plaintiff was maneuvering the stage. He could not recall whether he had been setting up the stage or taking it down, but the stage had not been opened at the time. He stood to one side of the stage and grabbed it by the set of casters that swivelled the stage. As he swung the stage, it began to tip toward him. Thinking another employee had been on the other side of the stage, he grabbed the leading edge of the stage as it fell toward him with the thought the other person would stabilize the stage from the other side. Unfortunately, there was no one on the other side of the stage, and plaintiff did not have the strength to keep the stage from falling. The metal edge of the stage fell to the ground, taking off the tips of three fingers on plaintiff's left hand.
 I
The first assignment of error complains the court erred by permitting the sole defense witness, defendant's vice president of engineering, to give expert testimony without first providing plaintiff with notice that he would be presented as an expert. As pertinent to the assignment of error, defendant's witness testified regarding height-to-weight ratios and materials available to defendant at the time it designed the stage. The court overruled * * * plaintiff's objections on both these points, finding the vice president gave fact testimony, not expert testimony. Plaintiff argues the court's ruling violated the notice provisions of both Civ.R. 26 (E) and Loc.R. 21.1 (B) of the Common Pleas Court of Cuyahoga County, General Division because, although he had notice that the vice president would testify, he did not have any notice that the witness would testify as an expert.
The flaw in plaintiff's argument is that both of these rules refer to "expert" witnesses, yet defendant's witness did not testify as an expert. An expert witness is generally defined as one qualified "by specialized know ledge, skill, experience, training or education regarding the subject matter of the testimony." See Evid.R. 702(B). Expert witnesses must give testimony that is beyond the knowledge or experience of lay persons, and the testimony must be based on reliable scientific, technical or other specialized information. See Evid.R. 701 (A) and (C). The court must make a preliminary determination about whether a particular witness qualifies as an expert witness, and that decision is subject to review only for an abuse of discretion. See Evid.R. 104 (A) and 702; State v. Tomlin(1992),63 Ohio St.3d 724.
These rules do not prohibit lay witnesses from rendering opinions at trial. Evid.R. 701 states:
 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
Both prongs of Evid.R. 701 must be met before opinion testimony is properly admitted. Brentson v. Chappell(1990), 66 Ohio App.3d 83. The trial court's decision to admit evidence pursuant to Evid.R. 701 is subject to an abuse of discretion standard. Urbana,ex rel. Newlin v. Downing(1989), 43 Ohio St.3d 109, 113.
 A
Our review of the subject testimony convinces us that the court did not abuse its discretion by overruling plaintiff's objections to the witness's testimony because defendant's witness gave lay testimony (albeit based on his experience as an engineer) that did not qualify as expert testimony. Beg inning first with the height-to-weight ratio, plaintiff's expert testified that the height of the stage unit was more than four times the width of the stage's base. Plaintiff's expert said, "in engineering circles with regard to things like scaffolding, anything mobile or stationary that people are standing on, it's customary to have a stability factor such that the height does not exceed four times the minimum width of the base." Plaintiff's expert subsequently admitted that he applied the customary" stability factor he cited as an analogy in this case because "mobile folding stages don't have any standards that I know of. I haven't been able to locate any in my research."
Defendant's witness testified he, too, knew of no applicable height/width ratios that would apply to mobile folding stages and that defendant did not refer to any standards when designing and manufacturing the stage. The witness went on to say that the stage had a relatively low center of gravity, meaning that most of the unit's weight was centered near the base, rather than the top, thus making it more stable. The witness also calculated the stage's height-to-width ratio as 4:1.2, or exceeding plaintiff's expert's ratio by a mere two inches.
Nothing in this portion of the witness's testimony could be considered expert testimony. The witness merely corroborated plaintiff's expert when he said that there were no applicable height/width ratios that applied to mobile stages. As to the center of gravity, we find nothing about this testimony that is beyond the knowledge of average juror. In Crane v. Lakewood Hosp.
(1995), 103 Ohio App.3d 129, 133-134, we stated that a nonexpert can give testimony relating to the stability of a chair, if that testimony is based upon observation and common experience. The witness could competently testify to his conclusion, based on extensive experience with the stage, that its low center of gravity would have enhanced the stage's stability.
 B
The second aspect of the witness's testimony concerned statements relating to what plaintiff characterizes as "the state of the art" for materials used in stage's edge. Plaintiff believed the angle iron used for the edge should have been replaced with less-sharp tubular metal. The witness testified that defendant constructed the stage in 1978, at a time when tubular steel was unavailable for mass production. The witness said that tubing did not generally become available until the mid-1980's.
There is nothing in this aspect of the witness's testimony that could be considered to be expert opinion as contemplated by the Rules of Evidence. The witness simply gave fact testimony, based on his long experience in the stage-building business, concerning when tubular metals became available for use in the manufacturing process. This was purely opinion testimony.
Because the witness did not give any opinion testimony, defendant had no reason to identify the witness as anything other than a fact witness. Consequently, the rules relating to notice of expert opinions were not applicable. The first assignment of error is overruled.
 II
The second assignment of error complains that the court erred by instructing the jury on the defense of unforeseeable misuse. Defendant requested the instruction based on plaintiff's attempt to catch the stage as it fell over. Plaintiff argues there were no facts presented at trial to suggest that he misused the stage and the court's instruction therefore would have been confusing to the jury.
The court should normally submit requested jury instructions if they are correct statements of the law applicable to the facts in the case and if reasonable minds might reach the conclusion sought by the instructions. See Murphy v. Carrollton Mfg. Co.
(1991), 61 Ohio St.3d 585, 591. Any ambiguity in a selected portion of the instructions does not constitute reversible error unless the instructions, as a whole, are so misleading as to prejudicially affect a substantial right of the complaining party. Kotitka v. Ford Motor Co.(1995), 73 Ohio St.3d 89, 92-93.
The court should not have instructed the jury concerning unforeseeable misuse because the testimony at trial did not tend to establish any misuse. A defendant in a products liability action is provided with a complete defense if the plaintiff misused the product in an unforeseeable manner. Bowling v. Heil
(1987), 31 Ohio St.3d 277, 282; State Farm Fire Cas. Co.v. Chrysler Corp.(1988), 37 Ohio St.3d 1, 4; Shannon v. WacoScaffolding Equip.(July 27, 1995), Cuyahoga App. Nos. 67406 and 67604, unreported at 7. Unforeseeable misuse is an affirmative defense, which means that even if the product were defectively designed, the plaintiff's unforeseeable misuse would prevent liability from attaching. See Davis v. Cincinnati, Inc.
(1995), 81 Ohio App.3d 116, 119.
Defendant claimed the misuse occurred when plaintiff attempted to catch the falling stage, but that act was not a "misuse" of the product as contemplated by the affirmative defense. "Misuse" of a product suggests a use which was unanticipated or unexpected by the product manufacturer, or unforeseeable and unanticipated. Nothing in the evidence showed plaintiff unforeseeably misused the stage. At worst, his attempt to catch the falling stage might have been an unreasonable misuse, but unreasonable misuse (unlike unforeseeable misuse) is not a complete defense to a negligence claim. See Calmes v. Goodyear Tire Rubber Co.(1991), 61 Ohio St.3d 470,476; Bowling, 37 Ohio St.3d at 4, fn.1.
Despite this error, we find no prejudice under the circumstances. Jury interrogatories can cure any ambiguity or error in jury instructions. Reitz v. Howlett(1995), 106 Ohio App.3d 409;Pacific Great Lakes Corp. v. Bessemer Lake ErieR.R.(Oct. 29, 1998), Cuyahoga App. No. 70394, unreported at 7. Here, the jury answered an interrogatory with the specific finding that the mobile stage did not contain a design defect. This finding precluded any liability under the circumstances, so the jury's consideration of the affirmative defense of unforeseeable misuse would have been harmless beyond doubt.
Moreover, the court specifically charged the jury that "any negligence or fault on the part of the plaintiff is not to be considered by you in deter mining the liability of the defendant. Negligence is not the issue." This instruction leaves us no doubt that the jury would not have considered the court's unforeseeable misuse instruction when finding that no design defect existed. The second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., MICHAEL J. CORRIGAN, J., CONCUR.
 ___________________________________ JUDGE JOHN T. PATTON
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).